No. 15-55446

————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

AMERICANS FOR PROSPERITY FOUNDATION,
Plaintiff-Appellee,

v.

KAMALA HARRIS,
in her official capacity as the Attorney General of California,
Defendant-Appellant.

————————————

On Appeal from the United States District Court
for the Central District of California
Case No. 2:14-cv-09448-R-FFM

————————————

**RESPONSE OF PLAINTIFF-APPELLEE TO
DEFENDANT-APPELLANT'S MOTION
TO STAY TRIAL PROCEEDINGS PENDING APPEAL**

————————————

Harold A. Barza
Carolyn Homer Thomas
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Derek L. Shaffer
William A. Burck
Jonathan G. Cooper
777 Sixth St. NW, 11th Floor
Washington, DC 20001
(202) 538-8000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Counsel for Plaintiff-Appellee
Americans for Prosperity Foundation*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ............................................................................................3

I.    This Court Lacks Jurisdiction To Grant The Requested Stay ..............3

II.    Federal Rule Of Appellate Procedure 8 Does Not Authorize The Requested Stay ......................................................................5

III.    The Attorney General Improperly Bypassed The District Court In Requesting The Instant Stay .............................................7

IV.    The Attorney General Lacks Substantive Justification For The Requested Stay ......................................................................9

    A.    The Attorney General Lacks Irreparable Injury.......................10

    B.    The Attorney General Lacks Requisite Likelihood of Success on the Merits................................................12

    C.    A Stay Would Substantially Injure the Foundation..................15

    D.    A Stay Would Be Inimical to the Public Interest .....................16

CONCLUSION .......................................................................................20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Adams County/Ohio Valley School Board*,
310 F.3d 927 (6th Cir. 2002)..............................................................8, 9

*Burlington Northern & Santa Fe Railway v. Vaughn*,
509 F.3d 1085 (9th Cir. 2005).................................................................4

*Caribbean Marine Services Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988)...................................................................5

*Castaneda v. United States*,
2008 U.S. Dist. Lexis 40567 (C.D. Cal. May 20, 2008) ......................16

*Center for Competitive Politics v. Harris*,
784 F.3d 1307 (9th Cir. 2015)........................................... 15, 17, 18, 19

*Cheney v. United States District Court*,
542 U.S. 367 (2004).................................................................................7

*Clinton v. Jones*,
520 U.S. 681 (1997)...............................................................................16

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)...................................................................7

*Contour Design, Inc. v. Chance Mold Steel Co.*,
649 F.3d 31 (1st Cir. 2011) .....................................................................5

*Dahl v. City of Huntington Beach*,
84 F.3d 363 (9th Cir. 1996)...................................................................16

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014)..................................................................14

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012)..................................................................14

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980)...............................................................................11

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982)...................................................................................4

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988)...............................................................................1, 3

*Haskell v. Harris*,
745 F.3d 1269 (9th Cir. 2014) (*en banc*)................................................9

*Hilton v. Braunskill*,
481 U.S. 770 (1987)........................................................................ 6, 10, 12

*Hirschfeld v. Board of Elections in City of New York*,
984 F.2d 35 (2d Cir. 1993) ....................................................................8, 9

*In re Bonner Mall Partnership*,
2 F.3d 899 (9th Cir. 1993).......................................................................11

*In re Google, Inc.*,
2015 U.S. App. Lexis 16544 (Fed. Cir. July 16, 2015) ...........................7

*In re Lewis*,
212 F.3d 980 (7th Cir. 2000)...................................................................12

*Irwin v. Mascott*,
370 F.3d 924 (9th Cir. 2014)...................................................................13

*K.W. ex rel. D.W. v. Armstrong*,
789 F.3d 962 (9th Cir. 2015).....................................................................4

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ...................................................................7

*Landis v. North American Co.*,
299 U.S. 248 (1936)....................................................................................6

*LG Electronics, Inc. v. Eastman Kodak Co.*,
2009 U.S. Dist. Lexis 44056 (S.D. Cal. May 26, 2009)........................16

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005)...................................................................7

*Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong*,
   575 F. App'x 801 (9th Cir. 2014) ............................................................5

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................... 6, 10, 12

*PaineWebber, Inc. v. Farnam*,
   843 F.2d 1050 (7th Cir. 1988) ..............................................................11

*Plotkin v. Pacific Telephone & Telegraph Co.*,
   688 F.2d 1291 (9th Cir. 1982) .................................................................4

*Renegotiation Board v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974) ..................................................................................11

*SEC v. Dunlap*,
   253 F.3d 768 (4th Cir. 2001) ...................................................................8

*Shelton v. Tucker*,
   349 U.S. 479 (1960) ..............................................................................14

*Sherwood v. Marquette Transportation Co.*,
   587 F.3d 841 (7th Cir. 2009) .................................................................12

*Southwest Voter Registration Education Project v. Shelley*,
   344 F.3d 914 (9th Cir. 2003) (*en banc*) ..............................................14

*Sports Form, Inc. v. United Press International, Inc.*,
   686 F.2d 750 (9th Cir. 1982) ...................................................................5

*State of California ex rel. Christensen v. FTC*,
   549 F.2d 1321 (9th Cir. 1977) ...............................................................11

*Townley v. Miller*,
   693 F.3d 1041 (9th Cir. 2012) .................................................................3

**Statutes**
28 U.S.C. § 1292(a)(1) ...............................................................................3, 7

28 U.S.C. § 1292(b) ....................................................................................1, 6

**Rules**

Federal Rule of Appellate Procedure 8 ........................................................ 2, 6, 7, 9

Federal Rule of Civil Procedure 23(f) ......................................................................6

Federal Rule of Civil Procedure 30(b)(6) ..............................................................17

# INTRODUCTION

The Attorney General of California overreaches by moving this Court, one month out from oral argument, to stay **all proceedings** in the district court pursuant to an appeal from a **preliminary injunction** entered in **February**. Eight months ago, the Attorney General was enjoined from demanding the names and addresses of major donors to the Americans for Prosperity Foundation, a 501(c)(3) nonprofit charity. Excerpts of Record ("ER") 1–4, Docket Entry 12-2. The injunction prevents what the district court found would otherwise be a chilling effect on the expressive and associational rights of the Foundation and its donors.

In March, the Attorney General appealed the preliminary injunction to this Court. She then sought a stay of all proceedings below, which the district court denied back in May, more than five months ago.[1] Supplemental Excerpts of Record ("Supp. ER") 150–52, Docket Entry 19-2. Over the ensuing months, the parties briefed the appeal of the preliminary injunction (now set to be argued December 9), while simultaneously pressing forward below to build the factual record that will inform final judgment. We are now in the thick of factual discovery, with trial slated to commence February 23, 2016. Supp. ER 149.

---

[1] At that point, the Attorney General could have timely sought permission to appeal the denial of that motion under 28 U.S.C. § 1292(b) or petitioned for a writ of mandamus. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287–88 (1988). But the Attorney General did no such thing.

1

Aggrieved by a recent, adverse discovery ruling, however, the Attorney General has suddenly moved "to stay all proceedings in the district court pending resolution of this preliminary injunction appeal." Attorney General's Motion To Stay Trial Proceedings Pending Appeal ("Motion") at 1, Docket Entry 34-1. The Attorney General thus asks this Court to stave off a looming trial at which final determinations may be made on a properly developed factual record. Her instant request is both procedurally foreclosed and substantively meritless.

To begin with, the Attorney General is transgressing this Court's jurisdiction and procedures. Jurisdiction in an interlocutory appeal from a *preliminary injunction* is limited to review of that injunction; there is no roving license for reviewing, let alone staying, *all proceedings* before the district court. Nor has the Attorney General identified any legal authority that would empower this Court to grant her requested stay. The one authority she cites—Federal Rule of Appellate Procedure 8—permits an appellate court to stay only a discrete order or judgment at issue on appeal, not all trial proceedings. Even if Rule 8 *did* authorize a stay of all proceedings, the Attorney General has separately disregarded the Rule's procedural requirements by failing to file her current motion with the district court.

As for the merits, the Attorney General's discovery gripe—the supposed gravamen of her motion—is no basis whatsoever for a stay. The Attorney General effectively concedes that she faces no injury apart from litigation expense; that no

2

more constitutes irreparable harm for her, however, than it does for any other litigant. Moreover, the Attorney General has no likelihood of success on the merits. Finally, the relief she seeks would harm the Foundation as well as the public. For these reasons, the stay request should be denied out of hand.

## ARGUMENT

### I.   This Court Lacks Jurisdiction To Grant The Requested Stay

The Attorney General's motion is jurisdictionally foreclosed. The present appeal—from an order granting a preliminary injunction—was taken under 28 U.S.C. § 1292(a)(1). *See* Appellant's Opening Brief at 3, Docket Entry 12-1. Such an appeal gives this Court jurisdiction over the preliminary injunction. *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012). But an appeal under § 1292(a)(1) does not create jurisdiction to consider a stay of all proceedings. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279–88 (1988). It follows that the Court might stay the *preliminary injunction*, were such a stay properly and timely requested. But, that is *not* what the Attorney General seeks. Her request is to stay *all proceedings* below. This transgresses jurisdictional bounds.

In an interlocutory appeal such as this, this Court's jurisdiction over aspects of the case *other than* the precise order on appeal—*i.e.*, its "pendent appellate jurisdiction"—is extremely narrow. Skeptical of its use, this Court sets a "very high bar" for pendent jurisdiction. *Burlington Northern & Santa Fe Railway v.*

3

*Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2005). It "exercise[s] pendent jurisdiction over an otherwise nonappealable issue only in two narrow circumstances: (1) if it is inextricably intertwined with or (2) necessary to ensure meaningful review of the order properly before us on interlocutory appeal." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 975 (9th Cir. 2015) (citation and quotation marks omitted).

By no means is a stay of all proceedings "inextricably intertwined with" or "necessary to ensure meaningful review of" the preliminary injunction. To the contrary, the ongoing proceedings are distinct, serving to develop the factual record and to set up the final merits determinations that will remain necessary regardless of how this appeal is resolved. Thus, the decision whether to stay a case or push on to final judgment is left to the district court. "[I]t is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Plotkin v. Pacific Telephone & Telegraph Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (approving decision to proceed to summary judgment while appeal from a preliminary injunction proceeded).

It is axiomatic that only one court has jurisdiction over any one aspect of a case at any one time. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Because the district court retains jurisdiction to proceed to discovery, summary judgment, and trial, this Court lacks jurisdiction to review those distinct aspects of the proceedings in an interlocutory appeal from a preliminary injunction.

4

*See, e.g.*, *Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong*, 575 F. App'x 801, 804 (9th Cir. 2014) (on appeal from preliminary injunction, circuit court lacks jurisdiction to review order of expedited discovery).

What is more, even as to the district court's exercise of *its* jurisdiction, this Court has offered the "strong suggestion" that a district court should generally proceed precisely as the court below has: "rather than delay all proceedings during the pendency of an appeal from an order granting a preliminary injunction," parties and courts are best served to pursue "a rapid resolution" by "moving for summary judgment or proceeding to a trial." *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 673 (9th Cir. 1988) (citing *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982)); *see also, e.g.*, *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011) (the "standard practice" in this circumstance is for the district court to "conduct a trial and grant or deny a permanent injunction based on that trial"). Thus, even if this Court might in theory call upon its pendent jurisdiction, it would have no good reason to do so here. The district court is simply doing what this Court has instructed by pursuing a rapid and final resolution of the proceedings below.

## II. Federal Rule Of Appellate Procedure 8 Does Not Authorize The Requested Stay

Setting aside the jurisdictional problem, the Attorney General identifies no legal authority—no statute, rule, or precedent—for granting the extraordinary relief

she requests. All the Attorney General invokes is "Rule 8 of the Federal Rules of Appellate Procedure." Motion at 6. By its terms, however, Rule 8 authorizes a court of appeals to stay only the "judgment" or "order" being appealed—not to stay *all proceedings* in the lower court. FRAP 8(a); *see Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (Rule 8 "govern[s] the power of . . . courts of appeals to stay *an order* pending appeal" (emphasis added)). Authority to stay the specific "judgment" or "order" that has been appealed should not be mistaken for authority to stay *all proceedings* still ongoing.

When a statute or rule empowers a court of appeals to stay all proceedings, it addresses that explicitly. *E.g.*, 28 U.S.C. § 1292(b) ("Application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."); Federal Rule of Civil Procedure 23(f) ("An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."). That Rule 8 speaks only to a stay of a "judgment" or "order" rather than a stay of "proceedings" confirms that it does not authorize a stay of all proceedings below. Tellingly, the Attorney General cites no case in which an appellate court invoked Rule 8 to stay all proceedings.[2]

---

[2]  The few cases the Attorney General does cite all involve either (1) a stay of a specific *order* or (2) review of a *district court's* decision to stay *its own* proceedings. *See Nken v. Holder*, 556 U.S. 418 (2009) (discussing stay of an order of removal); *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936) (affirming district court's inherent power to stay its own proceedings); *Lair v.*

Nor has the Attorney General identified any other legal authority supporting her motion. To be sure, a litigant can petition a court of appeals for a writ of mandamus to stay all proceedings—albeit in rare, carefully circumscribed circumstances.[3] *E.g.*, *In re Google, Inc.*, 2015 U.S. App. Lexis 16544 (Fed. Cir. July 16, 2015) (issuing writ of mandamus to stay all proceedings until the district court ruled on a long-pending motion to transfer the case). But no such prospect exists here. The Attorney General has not petitioned for a writ of mandamus, has not followed this Court's rules governing mandamus, and has not claimed substantive basis for mandamus. Instead, she seeks a stay of all proceedings under Rule 8 as incident to her appeal of the preliminary injunction under § 1292(a)(1). The lack of authority for such a request under Rule 8 is glaring and dispositive.

## III. The Attorney General Improperly Bypassed The District Court In Requesting The Instant Stay

Nor has the Attorney General satisfied Rule 8's procedural requirements. To seek a stay from this Court under Rule 8, the Attorney General "must" (i) "show that moving first in the district court would be impracticable" or (ii) "state that, a

---

*Bullock*, 697 F.3d 1200 (9th Cir. 2012) (staying an order enjoining a state statute); *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) (vacating district court's stay of its own proceedings); *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) (denying mandamus to overturn district court's stay of its own proceedings).

[3] Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes," requiring that a petitioner carry (among other things) "the burden of showing that [her] right to issuance of the writ is clear and indisputable." *Cheney v. United States District Court*, 542 U.S. 367, 380–81 (2004) (citations and quotation marks omitted).

motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." FRAP 8(a)(2). Stay motions that disregard this requirement are routinely denied. *E.g.*, *Baker v. Adams County/Ohio Valley School Board*, 310 F.3d 927, 930–31 (6th Cir. 2002); *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001); *Hirschfeld v. Board of Elections in City of New York*, 984 F.2d 35, 38 (2d Cir. 1993).

Here, the Attorney General neither submitted her current stay motion below nor explained why doing so would be impracticable. Although she tries to maintain that her ***earlier***, ***different*** motion for a stay fits the bill, it cannot.

According to the Attorney General, "[a] motion to stay proceedings in the district court was first made in and denied by the district court." Motion at 7 (citing Dist. Ct. Dkt. No. 41). In fact, *that* motion to stay proceedings was filed over six months ago (on April 8, 2015), was denied over five months ago (on May 19, 2015), and advanced grounds categorically different from those now advanced to this Court. *Compare* Exhibit 1 to Zelidon-Zepeda Declaration, Docket Entry 34-2 (motion filed in the district court), *with* Motion at 1–14 (present motion).

In her current motion, the Attorney General argues that a stay is newly necessitated by the district court's recent order denying her motion to compel the Foundation to disclose the identities of its major donors. *See* Motion at 1 (arguing that the district court's ruling will "grossly prejudice the defense"); *see also id.* at

8

4–6, 9–11.  Because the district court did not issue this discovery ruling *until October 13, 2015* (*see* Exhibit 5 to Zelidon-Zepeda Declaration), it could not possibly have underlain the stay request that the district court denied in *May* 2015.  In contending that she afforded the district court, **six months ago**, the first crack at her instant stay request, the Attorney General is resorting to make-believe.

As this Court consistently emphasizes, "we are a court of review, not first view."  *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (*en banc*).  A movant complies with Rule 8 only if it gave the district court a "first view" of the arguments it raises in its motion or else explains why it could not.  *See Baker*, 310 F.3d at 930–31 (rejecting novel argument in a Rule 8 motion because it was not included in the stay motion the party filed in district court).  It is as conspicuous as it is preclusive, therefore, that the Attorney General bypassed the district court in making the case for a stay that she purports to make here and now.[4]

### IV.  The Attorney General Lacks Substantive Justification For The Requested Stay

The Attorney General's stay request fares no better on the substance.  Four factors govern issuance of a stay pending appeal:  "(1) whether the stay applicant

---

[4]     Alternatively, if this Court concludes that the current Rule 8 motion reprises the motion the district court denied back in April, then the fact that the Attorney General slept on her request for *five months* before turning to this Court should itself be fatal.  *See Hirschfeld*, 984 F.2d at 39 (sanctioning moving party for abuse of process and finding the party's "inexcusable delay" in seeking stay "severely undermine[d]" its argument that "absent a stay irreparable harm would result").

has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton*, 481 U.S. at 776). The first two factors—likelihood of success and irreparable injury—"are the most critical." *Id*. The movant bears the burden of showing a stay is warranted. *See id.* at 433–34. The Attorney General does not come close to carrying that burden here.

### A. The Attorney General Lacks Irreparable Injury

Most obviously, the Attorney General fails to show that she will be irreparably injured absent a stay. The entirety of her argument about irreparable harm is slipped into a paragraph on page 11 of her motion (in a section ostensibly devoted to one of the other stay factors), without citation to any legal authority addressing irreparable harm. By the Attorney General's account, there may be "a tremendous waste of judicial and party resources" if this Court's ruling on the preliminary-injunction appeal results in a second trial. Motion at 11. At the same time, the Attorney General is obliged to concede that "litigation costs alone do not generally constitute irreparable injury." *Id*. She then concludes by asserting— without citation—that "this factor weighs in favor of staying proceedings which might be rendered moot." *Id.*

10

The Attorney General is right to concede that the litigation costs she references do not qualify as irreparable injury. This Court, like the Supreme Court, has so held repeatedly. *E.g.*, *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (rejecting party's argument that "the expense and disruption of defending itself in protracted adjudicatory proceedings constitutes irreparable harm"); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *State of California ex rel. Christensen v. FTC*, 549 F.2d 1321, 1323 (9th Cir. 1977) ("litigation expenses . . . do not constitute irreparable injury"). Were the rule otherwise, then any party aggrieved by a discovery ruling (or, for that matter, any pretrial or evidentiary ruling) could always employ the Attorney General's reasoning to complain of irreparable harm.

Accordingly, the Attorney General is quite wrong to argue that "this factor" weighs in favor of "staying proceedings which might be rendered moot." Many a litigant has made this argument, to no avail. *See, e.g.*, *In re Bonner Mall Partnership*, 2 F.3d 899, 904 n.12 (9th Cir. 1993) ("the prospect of unnecessarily litigating the merits" of a case does "not cause irreparable harm"). Indeed, a sister circuit considers this argument so "frivolous" as to be sanctionable. *See PaineWebber, Inc. v. Farnam*, 843 F.2d 1050 (7th Cir. 1988) (sanctioning party seeking stay pending appeal for relying on this argument); *Sherwood v. Marquette*

*Transportation Co.*, 587 F.3d 841, 844–45 (7th Cir. 2009) (reiterating that it is "frivolous" to argue that the "expense of litigation" is "irreparable injury").

Nor did the Attorney General suffer any irreparable injury from the district court's ruling denying her motion to compel the Foundation to disclose donor identities. *See* Motion at 9–11. According to the Attorney General, "this damage" can "only be prevented by a stay." *Id.* at 11. Wrong again. The Attorney General can seek relief from an adverse discovery ruling just as any litigant can: upon appeal from final judgment. By no means does an adverse discovery ruling warrant appellate intervention merely because it might later be reversed. "Many an interlocutory order—denials of summary judgment and decisions concerning discovery prominent among them—may occasion substantial expense and second trials, but they are not on that account immediately reviewable," nor do they "inflict irreparable injury." *In re Lewis*, 212 F.3d 980, 983 (7th Cir. 2000).

In short, the Attorney General has failed to show anything approaching irreparable injury as known to the law. Her motion may be denied for this reason alone. *See Nken*, 556 U.S. at 434–35.

### B. The Attorney General Lacks Requisite Likelihood of Success on the Merits

With respect to the prospect of success on the merits, *Nken* requires a stay applicant to make a "strong showing" that she is likely to prevail. 556 U.S. at 434 (quoting *Hilton*, 481 U.S. at 776). To try to satisfy this factor, the Attorney General

briefly summarizes what she characterizes as three reversible errors the district court made in granting the preliminary injunction. *See* Motion at 8–9. Notably, these are all off point considering that the Attorney General has moved ***not*** to stay the ***preliminary injunction*** but rather to stay ***all proceedings***.

To the extent that the Attorney General is, in essence, arguing that the district court was wrong to *enforce* the operative preliminary injunction, as it did by refusing to compel a discovery demand by the Attorney General that contravened the express terms of the injunction, the Attorney General's prospect of success is nil. The law makes perfectly clear that a litigant aggrieved by the terms of an operative injunction is obliged to seek relief through proper channels rather than violate the injunction. *See Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2014). Here, however, the Attorney General demanded through discovery the very same donor information that the preliminary injunction *expressly prohibits* her from demanding, without ever seeking a stay of the injunction or any clarification or modification thereof. In that posture, she was at least arguably in contempt; by no stretch of the imagination, however, can she plausibly complain that her requested discovery was due to be granted.

Moreover, none of the Attorney General's three merits points establishes reversible error as to the preliminary injunction. First, the Attorney General claims that the court erred in "[e]xcusing the Foundation from making a threshold

showing of some burden on First Amendment rights." Motion at 8. The Attorney General neglects to note that the district court separately found that the Foundation "has made such a showing." ER 11. Thus, even assuming *arguendo* that a threshold showing was necessary, the court found it made with record evidence.

Second, the Attorney General contends that the showing of First Amendment harm was based on inadequate evidence because she keeps confidential the Schedule Bs filed with her. Motion at 8–9. Such a *factual* challenge is unlikely to prevail. Review of a grant of a preliminary injunction is "limited and deferential," *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (*en banc*), and factual findings cannot be reversed unless "clearly erroneous," *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citation and quotation marks omitted). Even if the Attorney General could justify her assertion that she keeps Schedule Bs confidential—which she cannot, as recent discovery revelations have shown, *see* pages 17–18 below—she has no answer to the problems that (1) California law ostensibly *requires* the Attorney General to make available to the public any Schedule B filed with her, *see* Cal. Gov't Code § 12590;[5] (2) the Attorney General wields unconstitutional discretion over how to treat Schedule Bs, *see Shelton v. Tucker*, 349 U.S. 479, 486 (1960); *Doe v. Harris*, 772 F.3d 563, 579–80 (9th Cir. 2014); and (3) disclosure to state officials by itself

---

[5] The Attorney General herself has since recognized as much in proposing to change the governing regulation. *See* Docket Entry 18-2, Exhibit 1 at 1–2.

chills speech, ER 12–13, 25–26, 55–56.  *See also* Appellee's Answering Brief at 34–43, Docket Entry 19-1.

Third, the Attorney General contends that the court misapplied exacting scrutiny.  Motion at 9.  She emphasizes that this Court, in *Center for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir. 2015), suggested a demand for Schedule B can survive *facial* challenge.  Here, though, the preliminary injunction responds to an *as-applied* challenge (the injunction protects *only* the Foundation), and the district court explained why the Foundation made a sufficient showing to warrant a preliminary injunction as to it when applying exacting scrutiny on this record.  ER 3–4, 9–15, 24–25; *see also* Appellee's Answering Brief at 27–51.

### C.    A Stay Would Substantially Injure the Foundation

On the other side of the scale, the Foundation and its donors face palpable harm from a stay.  Until permanent relief is secured, the Foundation and its donors face ongoing doubt and thus chill on the exercise of their expressive and associational rights, including their rights to fundraise and donate.  *See* ER 12–13.

Separately, there is a risk that staying all proceedings will lead to loss of documentary and testimonial evidence.  During stays, memories fade, witnesses become unavailable, and documents go missing.  Indeed, one of the defendant's key witnesses has already retired during this litigation.  Delaying proceedings thus "would increase the danger of prejudice resulting from the loss of evidence,

including the inability of witnesses to recall specific facts." *Clinton v. Jones*, 520 U.S. 681, 707–08 (1997). "[A]s the parties' naturally experience turnover in workforces during a stay, they may lose their ability to compel deposition and trial testimony from employees who leave. . . ." *LG Electronics, Inc. v. Eastman Kodak Co.*, 2009 U.S. Dist. Lexis 44056, at *7 (S.D. Cal. May 26, 2009).

The Attorney General rejoins that, "[b]ecause the preliminary injunction remains in place until resolution of the appeal, the Foundation cannot argue that its activities are being impacted in any way, or that any of its donors are facing potential harm." Motion at 12. That ignores the risk of lost or forgotten evidence, as well as the temporary nature of preliminary relief, which in turn translates to some continuing chill. The equities, therefore, tip sharply against a stay.

### D.    A Stay Would Be Inimical to the Public Interest

Finally, the public interest lies in "expeditious resolution of litigation" rather than letting cases linger. *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996). Any case that involves "serious constitutional violations" is, by its nature, one where "the public interest favors allowing the plaintiff to proceed absent a compelling interest to the contrary." *Castaneda v. United States*, 2008 U.S. Dist. Lexis 40567, at *13 (C.D. Cal. May 20, 2008).[6]

---

[6]    The Attorney General argues that the need to conserve the *parties'* resources means that the *public* interest favors a stay, *see* Motion at 12–13, but this factor properly focuses on the interests of the *overall public*, not the *parties*. In

In this case, moreover, there is an enhanced public interest in letting discovery proceed. As desperate as the Attorney General may be to halt discovery, the courts and the public should be eager to see its fruits. Every passing week exposes the falsity of key representations and assurances offered by the Attorney General and her officers. Indeed, recent days have seen revelations that disprove, conclusively, submissions that the Attorney General has made to this Court and that this Court in turn relied upon in *Center for Competitive Politics*.

In particular, Kevis Foley, the Attorney General's former head of the Registry for Charities and relevant Rule 30(b)(6) designee, just acknowledged under oath pervasive, gaping, hitherto-undisclosed lapses in the "confidentiality" the Attorney General purports to accord Schedule B information. This Tuesday, after testifying that she would be "disconcerted" if she learned that one confidential Schedule B is publicly available online at the Registry's website and "concerned" to learn that a thousand are, *see* Foley 11/03/15 Deposition Transcript at 214:12–215:18,[7] Ms. Foley was presented with **more than <u>1,400</u> unredacted Schedule Bs** found publicly available on the Registry's website in violation of the purported "confidentiality" policy, at which point she noted that the Registry staff does not include a programmer who can identify such breaches. *Id.* at 220:3–25;

---

any event, as explained above in Section IV.A, the Attorney General's concern over litigation costs does not merit a stay.

[7] The deposition transcript excerpts cited in this Response are attached to the supporting declaration of counsel filed with this Response.

*see also id.* at 137:2–6, 139:1–141:1 (acknowledging untold breaches that the Registry identified internally without documenting, reporting, or remediating beyond simply removing the confidential Schedule B from the website after the fact); *id.* at 203:25–207:13 (Registry neither specified any consequence for confidentiality breaches, nor disciplined anyone for them).

Thus, only by ignoring the actual facts could the Attorney General blithely assure this Court that "the Schedule B [i]s a confidential document that is kept in separate files that are not available to the public," Appellant's Opening Brief at 8, much as she assured this Court in *Center for Competitive Politics v. Harris* that "there is no evidence to suggest that any 'inadvertent disclosure' [of a Schedule B] has occurred or will occur," Answering Brief of Appellee at 33, No. 14-15978, Docket Entry 17-1 (9th Cir. July 8, 2014). *See also Center for Competitive Politics*, 784 F.3d at 1316 (deeming "speculative" the concerns that "the Attorney General's systems for preserving confidentiality are not secure, and that . . . donors' names might be inadvertently accessed or released").

Similarly, Steven Bauman, the Attorney General's head auditor and relevant 30(b)(6) designee, last week acknowledged under oath the counter-factual nature of the supposed regulatory interest in Schedule Bs—which the Attorney General has painted as longstanding and core. *Compare* Bauman 10/29/15 Deposition Transcript at 166:25–167:5 (Schedule B never triggered an audit or investigation);

*id.* at 34:24–35:4 (only *five* times since 2005 had Mr. Bauman's audit team consulted Schedule B in its roughly 360 investigations); *id.* at 36:18–21 (only once was a Schedule B implicated in one of Mr. Bauman's own investigations); *id.* at 248:8–14 (in that one instance, Mr. Bauman "probably could have completed [his audit] without [the Schedule B]"); *id.* at 45:25–46:5 (prior to this litigation, Mr. Bauman had never "written down or memorialized the utility and use of Schedule B in [his] work as an investigative auditor"); *id.* at 46:6–47:15, 126:12–22 (Mr. Bauman never pushed to obtain a missing Schedule B so that he could do his job as an auditor); *id.* at 248:15–249:4 (Mr. Bauman "not aware" of any instance where having a Schedule B obviated an audit or investigation); *id.* at 108:6–17 ("Schedule B is not about reporting self-dealing transactions," that information "comes from other places"), *with* Appellant's Opening Brief at 52–54 (representing that Schedule B "allows the Attorney General to determine whether an organization has violated the law, including laws against self dealing"); *id.* at 53 ("major donor information [is used] to test whether complaints filed against an organization alleging self dealing and other violations are frivolous or whether they merit further investigation . . . without subjecting the organization to the intrusion and burden of an audit"); *id.* at 57 (omitting Schedule B information would "compromise the Attorney General's ability to monitor and regulate charitable organizations"). *See also Center for Competitive Politics*, 784 F.3d at 1317

(crediting Attorney General's assertion that "immediate access to . . . Schedule B increases her investigative efficiency, and [enables her to] flag suspicious activity").

Although this Court need not review the full transcripts cited above in order to recognize why it is wholly appropriate to let discovery continue, we will be glad to lodge both full transcripts with the Court if it so wishes. Suffice it to note simply that more light, not less, should be shined on the actual facts as compared with the representations the Attorney General has been making in court.

## CONCLUSION

For the foregoing reasons, this Court should dismiss or deny the Attorney General's motion to stay.

Dated: November 5, 2015

Respectfully submitted,

Harold A. Barza
Carolyn Homer Thomas
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*/s/ Derek L. Shaffer*
Derek L. Shaffer
William A. Burck
Jonathan G. Cooper
777 Sixth St. NW, 11th Floor
Washington, DC 20001
(202) 538-8000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Counsel for Plaintiff-Appellee*
*Americans for Prosperity Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 5, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Derek L. Shaffer*
Derek L. Shaffer

*Counsel for Plaintiff-Appellee*
*Americans for Prosperity Foundation*